IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LISA M.,                          )
                                  )
            Plaintiff,            )
                                  )
      v.                          )      1:23CV692
                                  )
MARTIN J. O'MALLEY,[1]            )
Commissioner of Social Security,  )
                                  )
            Defendant.            )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Lisa M. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on December 2, 2020, alleging a disability onset date of January 10, 2020. (Tr. at 11, 177-78.)[2] Plaintiff's application was denied initially (Tr. at 58-65, 80-89) and upon reconsideration (Tr. at 66-74, 91-100). Thereafter,

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #3].

Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 101-02.) On April 26, 2022, Plaintiff, along with her attorney, attended the subsequent telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 11.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 20), and on January 12, 2023, the Appeals Counsel denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-7).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 14.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> osteoarthritis; bursitis; fibromyalgia; depression; and anxiety[.]

(Tr. at 14.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 14-15.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work with the following, additional limitations:

> [Plaintiff] can engage in frequent, but not constant, fingering, handling and feeling; and [she] can do unskilled work of a routine and repetitive nature not to exceed an SVP level of 2.

5

(Tr. at 15.) At step four of the analysis, the ALJ determined, based on the above RFC and the vocational expert's testimony, that Plaintiff was unable to perform any of her past relevant work. (Tr. at 18-19.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 19-20.)

Plaintiff now raises two challenges to the ALJ's RFC assessment. First, Plaintiff contends that the RFC fails to properly account for her moderate limitations in concentration, persistence, and pace. Second, she argues that the ALJ failed to consider the nature and extent of Plaintiff's activities of daily living when relying on these activities as indicative of Plaintiff's RFC.

A. Concentration, persistence, and pace

Plaintiff first argues that the ALJ failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace in the RFC assessment in accordance with Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). At step three of the sequential analysis, the ALJ in the present case determined that Plaintiff has moderate limitations in "concentrating, persisting, or maintaining pace." In Mascio, the Fourth Circuit explained that, where moderate limitations in concentration, persistence and pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638

Case 1:23-cv-00692-JEP   Document 11   Filed 09/23/24   Page 6 of 15

(quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016); see also Sizemore v. Berryhill, 878 F.3d 72, 80–81 (4th Cir. 2017); Shinaberry v. Saul, 952 F.3d 113, 121-22 (4th Cir. 2020) (noting that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC").

Here, as in Mascio, the ALJ found moderate limitations in concentration, persistence, or pace at step three of the sequential analysis. (Tr. at 14-15.) In doing so, the ALJ explained as follows:

7

> [Plaintiff] testified that she is "all over the place" when she does chores. [Plaintiff's husband] also stated that [Plaintiff] does not handle stress as well as she formerly did, and it takes her time to adjust to changes in routine. However, her overall concentration is good. [She] can pay attention for 2 to 3 hours at a time. She can do all personal financial functions, showing sufficient persisten[ce] to do multistep tasks.

(Tr. at 14.) Later in the sequential analysis, the ALJ formulated a mental RFC limiting Plaintiff to "unskilled work of a routine and repetitive nature not to exceed an SVP level of 2." (Tr. at 15.) When explaining the bases for these restrictions, the ALJ recounted Plaintiff's testimony at length:

> [Plaintiff] reported memory issues due to fibromyalgia; her husband will tell her something one night and [Plaintiff] will forget it 24 hours later. She has to write all of her appointments on a calendar. [Plaintiff] is prescribed medications for depression and anxiety. These conditions have gotten worse as her hand pain has gotten more severe. She usually remembers to do chores but she has too many things going on at once. . . . She sees a medical doctor for anxiety and depression, and not a psychiatrist.

(Tr. at 16.)

The mental limitation in the RFC to "unskilled work of a routine and repetitive nature," generally tracks the limitation at issue in <u>Mascio</u>.[5] Therefore, the question is whether the ALJ sufficiently explained the absence of further limitations elsewhere in his decision. Here, in finding that Plaintiff had moderate limitations in concentration, persistence, or pace, the ALJ

---

[5] The RFC limitation to work "not to exceed an SVP level of 2" does not appear to add a material limitation to the RFC. The SVP is the specific vocational preparation level required for a given position, and gauges "the amount of lapsed time it takes for a typical worker to learn the job's duties." Unskilled work corresponds to an SVP of 1 or 2. SSR 00-4p. In contrast, the Reasoning Level indicates "the minimal ability a worker needs to complete the job's tasks themselves." See <u>Hann v. Colvin</u>, No. 12-cv-06234-JCS, 2014 WL 1382063, at *16 n.9 (N.D. Cal. Mar. 28, 2014). In other words, "SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the [Reasoning Level] ratings." <u>Hall–Grover v. Barnhart</u>, No. 03-239-P-C, 2004 WL 1529283, at *4 (D. Me. April 30, 2004). In this case, the ALJ did not include a Reasoning Level in the RFC, but the Court notes that all of the jobs identified by the ALJ as representative positions do not exceed an SVP of 2 or a Reasoning Level of 2.

8

specifically determined (1) that Plaintiff's "overall concentration is good," (2) that she "can pay attention for 2 to three hours at a time," and (3) that she showed "sufficient persisten[ce] to do multistep tasks." (Tr. at 14.) Moreover, no medical source, including the State agency psychological consultants, opined that Plaintiff was more than mildly limited in this area of mental functioning, or in any area. Nevertheless, the ALJ expressly determined that the consultants "did not adequately consider [Plaintiff's] subjective complaints of depression and anxiety with inconsistent pace in doing chores," as reflected in her hearing testimony. (Tr. at 18.) Accordingly, the ALJ found Plaintiff's depression and anxiety to be severe and included RFC limitations to account for the effects of these impairments. In particular, the ALJ addressed Plaintiff's assertions that she "usually remembers to do chores but she has too many things going on at once" and "takes . . . time to adjust to changes in routine" by limiting her to routine, repetitive tasks. (See Tr. at 15, 16, 18.) While routine, repetitive tasks do not generally account for pace limitations, in this context, they address Plaintiff's stated difficulty choosing from among "too many" tasks by restricting her to a narrow range of duties and a fixed routine. This is clear from the ALJ's decision, where:

- The ALJ's finding of moderate limitations in concentrating, persisting or maintaining pace was specifically based on Plaintiff's testimony that "<u>she is 'all over the place' when she does chores</u>" and "<u>takes time to adjust to changes in routine</u>." (Tr. at 14) (emphasis added).

- The ALJ's summarized Plaintiff's testimony that "<u>she usually remembers to do chores but she has too many things going on at once</u>." (Tr. at 16) (emphasis added).

- With respect to that testimony, Plaintiff was asked if she had difficulty completing tasks, and responded, "I'm just all over the place. It's like . . . it's like I'm thinking, well, I need to turn the dishwasher on, but I need to go take my medicine first but, you know, it's like so many things going on at once and then you feel like you get nothing accomplished." (Tr. at 50.)

• The ALJ concluded that the opinions of the state agency psychological consultants were only partly persuasive because "they did not adequately consider [Plaintiff's] subjective complaints of depression and anxiety with <u>inconsistent pace in doing chores</u> (see hearing testimony)." (Tr. at 18) (emphasis added).

• The ALJ's finding of moderate limitations in concentration, persistence, or pace also specifically referenced Plaintiff's function report and the function report provided by her husband, reflecting that it takes time for Plaintiff to adjust to changes in routine, but her concentration is good, and she can pay attention 2 to 3 hours at a time and follow instructions. (Tr. at 14, 211-12, 219-20).

As noted above, the ALJ's decision to then limit Plaintiff to work of a "routine and repetitive nature" is clearly tied to these specific concerns, and the Court can trace the ALJ's reasoning. Overall, as set out above, "<u>Mascio</u> underscores the ALJ's duty to adequately review the evidence and explain the decision" in a manner that is sufficiently clear upon judicial review. <u>Tolbert</u>, 2016 WL 6956629, at *8. Because the ALJ in the present case did just that, substantial evidence supports the mental RFC as written.

B. Activities of daily living

Plaintiff next contends that the ALJ erred by citing Plaintiff's activities of daily living ("ADLs") "as a reason to discount her impairment severity without accounting for countervailing evidence regarding the nature and extent of her ADLs or explaining how the ability to perform these activities is indicative of an ability to perform full-time competitive work." (Pl.'s Br. [Doc. #7] at 13.) Plaintiff acknowledges that the ALJ was entitled to consider Plaintiff's daily activities when evaluating her symptoms and their impact on her functioning. However, in <u>Woods v. Berryhill</u>, the Fourth Circuit explained that "[a]n ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she

can perform them." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018); see also Arakas v. Comm's of Soc. Sec., 983 F.3d 83, 100 (4th Cir. 2020) ("Even assuming, as the ALJ noted, that Arakas's daily activities have, at least at times, been somewhat greater than [she] . . . generally reported, he provided no explanation as to how those particular activities . . . showed that [s]he could persist through an eight-hour workday.") (internal citations omitted); Lewis v. Berryhill, 858 F.3d 858, 868, n.3 (4th Cir. 2017) ("The ALJ points to Lewis' ability to perform incremental activities interrupted by periods of rest, such as 'driv[ing] short distances of up to 30 miles, shop for groceries with the assistance of her mother or roommate, handle her finances, and watch television.' The ALJ's conclusion that Lewis' activities demonstrate she is capable of work is unsupported by the record.") (citation omitted); Brown v. Comm'r, 873 F.3d 251, 263 (4th Cir. 2017) ("[T]he ALJ noted that Brown testified to daily activities of living that included 'cooking, driving, doing laundry, collecting coins, attending church and shopping.' The ALJ did not acknowledge the extent of those activities as described by Brown, e.g., that he simply prepared meals in his microwave, could drive only short distances without significant discomfort, only occasionally did laundry and looked at coins, and, by the time of the second ALJ hearing, had discontinued regular attendance at church and limited his shopping to just thirty minutes once a week. Moreover, the ALJ provided no explanation as to how those particular activities—or any of the activities depicted by Brown—showed that he could persist through an eight-hour workday."); see also Fletcher v. Colvin, No. 1:14CV380, 2015 WL 4506699 at *5-8 (M.D.N.C. Jul. 23, 2015).

Notably, the ALJ in the present case cited Plaintiff's activities not when assessing her RFC, but when assessing her mental abilities at step three of the sequential analysis. In

particular, when considering Plaintiff's ability to understand, remember, or apply information, the ALJ found that Plaintiff had a mild limitation based on the following abilities:

> [Plaintiff's husband] reported on April 11, 2021 that [Plaintiff] follows written instructions well, and she follows spoken instructions well if she understands them. [Plaintiff] can do all personal financial functions, showing intact cognitive function.

(Tr. at 15.) Similarly, when considering Plaintiff's ability to interact with others, the ALJ found that Plaintiff had a mild limitation based on the following abilities:

> [Plaintiff] communicates with friends and family 2 to 3 times a week via telephone, email and texting. She gets along fine with authority figures. Her mood and behavior on June 1, 2021 were normal. Furthermore, examiners observed on March 19, 2021 that she was alert, talkative, and pleasant, and that her speech was normal.

(Tr. at 15.) Further, with respect to Plaintiff's ability to adapt and manage for herself, the ALJ found that Plaintiff had a mild limitation based on the following abilities:

> [Plaintiff] has no problems with personal care. She can do household cleaning and laundry, and she shops in stores for groceries and clothes. [Plaintiff] can handle all personal financial functions, and she regularly goes to the grocery store, pharmacy[,] and doctor appointments.

(Tr. at 15.) All of these discussions were part of the analysis of Plaintiff's mental impairments, and particularly involved the evaluation of her mental impairments in the broad areas of functioning, based specifically on Plaintiff's testimony, function reports, and information in the medical record.

Notably, the <u>only</u> discussion of Plaintiff's activities later in the sequential analysis arose when recounting Plaintiff's testimony, which the ALJ did at great length:

> [Plaintiff] testified at the hearing that she has osteoarthritis and rheumatoid arthritis, and that fibromyalgia also contributes to her pain. If she tries to do too much, like scrubbing the bathtub or mopping the floor, she will develop excruciating pain and her hands will swell. This swelling is worse if she overuses

12

her hands. [Plaintiff] tries not to wear blouses with buttons because her grip strength is poor. She has trouble feeling with her hands at times. [Plaintiff] estimated that she can lift 5 pounds. If she tries to carry too many grocery bags[,] she will have pressure in her joints. She also ices and heats her hands an average of 25 times per month. Regarding medication side effects, [Plaintiff] testified that she has stomach upset and dizziness. The dizziness comes and goes. She uses the restroom 5 to 6 times daily. [Plaintiff] stated that she has daily pain in her knees, hips and elbows. She has trouble sleeping due to pain. Her joints swell with use, her knees are sore to the touch, and pain affects [Plaintiff's] ability to walk or stand. When she walks down the aisle at Walmart she has to rest before getting to the end. [Plaintiff] will lean on the cart when she goes grocery shopping, but she does not use a cane or a walking stick yet. She has discussed undergoing a Ketamine infusion as treatment, but her doctor wants to save that as a last resort. The provider also stated that [Plaintiff's] condition would get worse gradually, and that surgery would not help. Her hips hurt when she sits. [Plaintiff] estimated that she can sit for an hour before standing and stretching. She will sit in a recliner to take pressure off of her feet. She will have to make herself get up, eat and take her medication because fibromyalgia makes her fatigued. [Plaintiff] estimated that she sleeps 5 to 6 hours on a good night, and 3 to 4 hours on a bad night.

(Tr. at 16.)

Rather than overstating Plaintiff's activities, this excerpt catalogs Plaintiff's own statements regarding the alleged limitations in Plaintiff's ability to do housework and shop due to her impairments, particularly pain in her hands and other joints with overuse and fatigue from her fibromyalgia and medications. Plaintiff's treatment notes from throughout the relevant time period also document her reports of joint pain and fatigue. (Tr. at 17-18.) However, as noted by the ALJ, Plaintiff also retained consistently full strength, was encouraged to exercise, and was referred to physical and occupational therapy. (Tr. at 17-18.) The ALJ detailed the treatment notes at length, reflecting that in February 2020, Plaintiff had positive fibromyalgia areas but was encouraged to exercise; in October 2020 she had intact physical function, could make a fist, "DIP and PIP joints were negative, and there were no SI joint pains"; records from January 2021, February 2021, and March 2021 show she was doing well

and denied pain or weakness, and in June 2021 she was feeling better overall; records from August 2021 show some hand swelling, tenderness, and decreased strength, warranting the handling and fingering limitations included in the RFC, but records from November 2021 showed improvement with exam findings "benign overall." (Tr. at 17.)

The ALJ made clear that these findings, along with the findings of the State agency medical consultants, guided his determination that Plaintiff remained capable of the medium work and postural activities included in the RFC assessment. The State agency consultants at both the initial and reconsideration levels opined that Plaintiff could perform medium work with limited handling and fingering. (Tr. at 62-63, 71-72.) The ALJ found these opinions persuasive, noting that "[t]he consultants supported their conclusions with ample citations to the record, and their findings are consistent with evidence which shows intact physical function." (Tr. at 18.) The ALJ then provided examples of the evidence he relied upon in making this determination, including treatment notes demonstrating Plaintiff's ability to make a fist, consistently full upper and lower extremity strength with a normal gait, improvement in osteoarthritic and fibromyalgia symptoms with Cymbalta, and findings of normal muscle strength. (Tr. at 18.) Notably, the ALJ also chronicled the relevant treatment notes in detail in his decision. (See Tr. 16-18.) At no point in this decision did the ALJ cite Plaintiff's daily activities as indicative of her physical functional abilities, let alone overstate them as in Woods, Arakas, and similar cases. Accordingly, the Court finds no basis for remand.[6]

---

[6] The Court notes that the ALJ's determination only covers the period to May 4, 2022, the date of the ALJ's decision. Notably, Plaintiff's testimony reflects her concern that, according to her doctor, "there is no cure for this," and it will "just keep gradually getting worse." (Tr. at 46.) This concern is also reflected in the Function Reports, noting her fear of losing use of her hands and losing mobility in the future. (Tr. at 212, 220). If Plaintiff's condition has worsened, or if she has new evidence or testing covering the period after May 4, 2022, she can, of course, file a new claim and present that information to the Agency for further consideration.

14

IT IS THEREFORE ORDERED that the Commissioner's decision finding of no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #7] is DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #9] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 23rd day of September, 2024.

/s/ Joi Elizabeth Peake
Joi Elizabeth Peake
United States Magistrate Judge

---

However, there is not a sufficient basis to vacate and remand the ALJ's decision for the period up to May 4, 2022, for the reasons set out above.